UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

AMANDA OWENS,

    Plaintiff,                                      Case No. 3:15-cv-241

vs.

COMMISSIONER OF                      District Judge Walter H. Rice
SOCIAL SECURITY,                    Magistrate Judge Michael J. Newman

    Defendant.

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

---

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB"). This case is before the Court upon Plaintiff's Statement of Errors (doc. 9), the Commissioner's memorandum in opposition (doc. 11), Plaintiff's reply (doc. 13), the administrative record (doc. 6),[2] and the record as a whole.

**I.**

    **A.**    **Procedural History**

Plaintiff filed for DIB alleging a disability onset date of July 22, 2010. PageID 49. Plaintiff claims disability as a result of a number of alleged impairments including, *inter alia*, degenerative disc disease, bilateral carpal tunnel syndrome, obesity, depression, posttraumatic stress disorder ("PTSD"), and anxiety. PageID 51.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

After initial denials of her application, Plaintiff received a hearing before ALJ John S. Pope on August 27, 2013.  PageID 71-116.  The ALJ issued a written decision on January 22, 2014 finding Plaintiff not disabled.  PageID 49-65.  Specifically, the ALJ's findings were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since July 22, 2010, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease, bilateral carpal tunnel syndrome, obesity, depression, posttraumatic stress disorder, and anxiety (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"] to perform light work[3] as defined in 20 CFR 404.1567(b) except she may occasionally push/pull with the bilateral upper extremities, occasional handling/fingering bilaterally; occasionally climb, stoop, and crouch; frequently balance, kneel, and crawl; and she is limited to unskilled work with only occasional contact with the public, coworkers, or supervisors.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born [in] 1980 and was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

---

[3] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements.  20 C.F.R. § 404.1567.  Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 22, 2010, through the date of this decision (20 CFR 404.1520(g)).

PageID 51-65.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 32-34. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

B. **Evidence of Record**

The ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 53-63. Plaintiff, in her Statement of Errors, summarizes the relevant medical evidence. Doc. 9 at PageID 763-771. The Commissioner's memorandum in opposition defers to the ALJ's recitation. Doc. 11 at PageID 787. Except as otherwise stated herein, the undersigned incorporates the recitation of evidence put forth by both Plaintiff and the ALJ. Where applicable, the Court will identify the medical evidence relevant to this decision.

II.

3

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id*. at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id*.

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin*, 475 F.3d at 730, the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.*, 181 F.Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

**III.**

Plaintiff argues that the ALJ erred in: (1) weighing the opinions of three treating sources -- namely, Nicholas Davis, M.D., Stephen Pledger, M.D., and Vinod Patwa, M.D.; (2) deferring to the opinions of record reviewing medical sources; and (3) eliciting testimony from the vocational expert ("VE") that failed to comport with the Dictionary of Occupational Titles ("DOT"). Doc. 9 at Page ID 773-781. Finding the ALJ's decision merits reversal based on the first of these arguments, the undersigned does not reach the merits of Plaintiff's two remaining assignments of error.

With regard to the weighing of medical source opinions, "the Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No.

3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013).  Treating physicians and psychologists top the hierarchy.  *Id*.  "Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once."  *Id*.  "[N]on-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions."  *Id*. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker."  *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

"An ALJ is required to give controlling weight to 'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' if the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 385 (6th Cir. 2013) (citation omitted) (alterations in original).  This requirement is known as the "treating physician" rule.  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citation omitted).

Greater deference is given to treating source opinions "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]"  20 C.F.R. § 404.1527(c)(2); *see also Blakley*, 581 F.3d at 406.  Thus, an ALJ must give controlling weight to a treating source if the ALJ finds the treating physician's opinion well-supported by medically acceptable evidence and not inconsistent with other substantial evidence in the record.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for

the weight given to the claimant's treating source's opinion." *Blakley*, 581 F.3d at 406-07. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id*. "[I]t is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record" in the absence of "some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion" is accorded lesser weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

Thus, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406; *see also* 20 C.F.R. § 404.1527(c).[4] In addition, unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions according to [these] factors, regardless of their source[.]" *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

### A. Treaters Davis and Pledger

---

[4] In essence, "opinions of a treating source . . . must be analyzed under a two-step process, with care being taken not to conflate the steps." *Cadle v. Comm'r of Soc. Sec.*, No. 5:12 CV 3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013). Initially, "the opinion must be examined to determine if it is entitled to controlling weight" and "[o]nly if . . . the ALJ does not give controlling weight to the treating physician's opinion is the opinion subjected to another analysis based on the particulars of" 20 C.F.R. § 404.1527. *Id.*

In this case, Dr. Davis treated Plaintiff as her family physician and subsequently referred Plaintiff to Dr. Pledger, a spinal surgeon, who recommended that she undergo surgery to fuse her sacroiliac joint. PageID 507, 521. Dr. Pledger surgically fused Plaintiff's sacroiliac joint on September 13, 2012. PageID 530-31, 536-50. Subsequently, in April and May 2013 -- months following surgery on Plaintiff's sacroiliac joint -- Drs. Pledger and Davis separately opined that Plaintiff could only stand for 30 minutes at a time; sit for 30 minutes at a time; lift no more than five pounds; only occasionally bend; never stoop; and occasionally manipulate with either hand. PageID 672-73, 679-80.

Despite the consistency of these separate opinions offered by two separate treating sources -- one of whom, Dr. Pledger, is a specialist -- the ALJ found that these opinions deserved "little weight" because they were "not supported by objective findings and treatment notes, which indicate the claimant's symptoms were improving after surgery." PageID 60. The ALJ also found the opinions inconsistent with Plaintiff's statements regarding her ability to dress, groom and bathe herself, and prepare meals. *Id*. Finally, the ALJ noted a purported inconsistency between the opinion that Plaintiff could occasionally perform fine and gross manipulation, but was unable to perform these activities effectively. *Id*. The undersigned finds that these reasons are either unsupported by substantial evidence in the record or insufficient to support a complete rejection of these treating source opinions.

First, insofar as the ALJ relied on "objective findings and treatment notes" that "indicate the claimant's symptoms were improving after surgery," the undersigned notes that the ALJ provides no particular citation following his statement in this regard. PageID 60. In his decision, the ALJ did, however, cite a record from September 26, 2012 noting that, "[d]uring [Plaintiff's] first follow-up visits two weeks post-surgery, she was healing nicely, though[] she

8

continued to report discomfort in the SI joint." PageID 58.  Presumably, this is the evidence upon which the ALJ relied in this regard.

The undersigned finds that the September 26, 2012 treatment record does not present substantial evidence upon which the ALJ could rely in finding that Plaintiff's "symptoms were improving after surgery." *Id*.  Significantly, that treatment record specifically states otherwise, noting that Plaintiff "continues to have some discomfort in the SI joint . . . very similar to her preop[eration] pain."  PageID 528.  In light of the fact that Plaintiff's pre-operation pain remained, the Court finds that Dr. Pledger's statement -- that Plaintiff is "healing up very nicely" -- most likely refers to the surgical incision itself healing without complication.  *Id*.  The undersigned also notes that the ALJ's conclusion in this regard is also belied by treatment notes from March 2013 which continue to document complaints of pain and clinical signs, such as tenderness "over the midline sacral area." PageID 637.  Finally, the September 26, 2012 record makes no reference to Plaintiff's lumbar spondylosis -- a condition that imaging performed post-surgery continued to objectively verify.  PageID 632.  Thus, the ALJ's conclusion -- that Plaintiff's symptoms improved post-surgery -- is not supported by substantial evidence.

Insofar as the ALJ found Plaintiff's testimony -- concerning her ability to dress, groom, bathe, and prepare meals -- conflicted with the treaters' opinions, the Court finds no substantial evidence supports a conclusion in that regard.  Instead, the ALJ described Plaintiff's testimony concerning her daily activities as follows:

> On a typical day since her alleged onset date, [Plaintiff] said she wakes up between 9:00 - 11:00 a.m., goes to the bathroom, takes her medication, and drinks coffee.  Then she said she sits in her recliner for three to four hours.  The claimant said she has one or two good days a week, and five to six bad days a week.  On a bad day, she said she would stay in bed all day instead of sitting in her recliner.  She said she stays in bed unless she has to take her daughter to work, which is either at 9:00 a.m. and 2:00 p.m., or at 4:00 p.m. and 10:00 p.m.  [Plaintiff] testified she only eats once a day, around 4:00 p.m.  [Plaintiff] said she drives herself to the appointments.  [She] said she is able to dress herself, but has difficulty putting on her

9

> right sock and shoe.  The claimant said she can groom and bather herself on good days, but needs help on bad days to prevent a fall.  She stated she is able to prepare simple meals and go grocery shopping.  [She] testified she is able to help place clothes in the washing machine, but said she does not do dishes, sweep, or vacuum.  [She] said she does not have any hobbies and she said she does not do any exercise.

PageID 55.  It is unclear to the undersigned how such testimony, especially Plaintiff's testimony regarding dressing, grooming, bathing, and preparing meals -- *i.e.*, the specific activities the ALJ noted conflicted with the treaters' opinions -- are inconsistent with the opinions of Drs. Pledger and Davis.  Further, the mere fact that a claimant can perform basic, necessary daily activities does not *per se* rule out disability.  *See Meece v. Barnhart*, 193 F. App'x 456, 465 (6th Cir. 2006) (finding "the fact that Plaintiff engages in minor life activities is not inconsistent with disabling" limitations).

Insofar as the ALJ found an inconsistency concerning Plaintiff's ability to perform fine and gross manipulation, the undersigned finds such reason insufficient to wholly reject the opinions of these treaters.  First, the Court finds no apparent inconsistency in stating that Plaintiff is limited to performing fine and gross manipulation with her hands only occasionally (*i.e.*, for only up to 2.5 hours per day), and that she also is unable to do so effectively.  Even assuming, *arguendo*, that an inconsistency exists, it is unclear whether Plaintiff's ability to perform fine and gross manipulation with her hands is determinative of the issue of disability in light of the significant exertional limitations opined by Drs. Pledger and Davis.  *See* PageID 113.

Finally, the Court notes that the ALJ made a point to critique Dr. Davis's opinion on the grounds that his assessment was identical to the one completed by Dr. Pledger.  PageID 60.  Although not specifically stated, it appears the ALJ found this factor weighed against giving the Dr. Davis's opinion weight.  *Id*.  Insofar as the ALJ rejected the opinion of Dr. Davis on the basis that his opinion was exactly the same as that offered by Dr. Pledger, such reasoning is error.  In fact, under the Commissioner's regulations, the fact that a treating source's opinion is consistent

10

with other opinion evidence -- and specifically, the opinion of another treater -- is a factor that weighs in *favor* of giving the opinion controlling weight or deferential weight.  *See* 20 C.F.R. § 404.1527(c)(2).  Based upon all of the foregoing, the undersigned finds that the ALJ erred in assessing the weight accorded the opinions of Drs. Pledger and Davis and, therefore, the non-disability finding is found unsupported by substantial evidence.

      B.      **Treater Patwa**

The undersigned also finds error in the ALJ's assessment of Dr. Patwa's opinion -- Plaintiff's treating psychiatrist who found Plaintiff had a number of "marked" and "extreme" functional limitations arising from her mental impairments.  *See* PageID 676.  The ALJ rejected this opinion -- giving it "little weight" -- because "it is not supported by objective findings and is not consistent with the claimant's own testimony"; namely, the fact that "she has been taking online classes since her alleged onset date."  PageID 62.  The ALJ also relied on Plaintiff's statement that "she stopped working, not because of her alleged mental impairments, but because of the physical restrictions she had from her work injury."  *Id*.

Not only did the ALJ decline to give Dr. Patwa's opinion controlling weight, he apparently did so on the conclusory grounds that "it is not supported by objective evidence."  *Id*.  This conclusory statement presents a number of problems, most notably the fact that it "is ambiguous."[5]  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013).  "One cannot

---

[5] The Court also notes there are clinical observations throughout Dr. Patwa's records regarding Plaintiff's mental impairments, such as her appearing "sad, angry and irritable," as well as displaying "aggressive behavior."  PageID 644, 646-48, 650-51, 653-71.  The Sixth Circuit concludes that "a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment" and "consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine." *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir.1989) (citation and alterations omitted). Instead, with regard to mental health impairments, "clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology." *Id*. (citation omitted).  In other words, many times in the realm of mental health impairments, clinical observations made by mental health professionals serve as the only objective evidence available to substantiate the existence, persistence, and limiting effects of such impairments. *See id*.

11

determine whether the purported problem is that the opinion[] rel[ies] on findings that are not objective (*i.e.*, that are not the result of medically acceptable clinical and laboratory diagnostic techniques, see 20 C.F.R. § 404.1527(c)(2)), or that the findings are sufficiently objective but do not support the content of the opinions." Absent further explanation, such conclusory contention fails to provide substantial evidence upon which the ALJ could reject giving Dr. Patwa's opinion controlling weight.

Further, the ALJ provides no explanation as to why the fact that Plaintiff has taken online classes and stopped working because of her physical impairments (rather than her mental ones) dictates that Dr. Patwa's assessment should be discarded. An ALJ cannot wholly reject a treating psychiatrist's opinion simply because Plaintiff's mental impairments, in and of themselves, may not support a disability finding. *Witherspoon v. Comm'r of Soc. Sec.*, No. 09-12847, 2010 WL 2231891, at *7 (E.D. Mich. June 3, 2010) (stating that "[t]he combined effect of all impairments must be considered, even if considered separately none would be disabling").

## IV.

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to award benefits. Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

Here, the proof of disability is not overwhelming. Accordingly, the undersigned concludes that remand for further proceedings is proper. On remand, the ALJ should appropriately review all evidence of record, and determine anew Plaintiff's disability status.

## V.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

Date:  July 20, 2016                             *s/ Michael J. Newman*
                                                 Michael J. Newman
                                                 United States Magistrate Judge

13

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).